**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER COYNE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  25-5539** |
| | : | |
| **NATIONAL GUARD BUREAU,** | : | |
| **DEPARTMENT OF DEFENSE** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                          **April 9, 2026**

A former member of our Air National Guard requested records solely under the Freedom of Information Act from the National Guard Bureau and Department of Defense. The National Guard Bureau did not timely respond. The former member sued without the aid of counsel. The National Guard Bureau and the former member negotiated to narrow the terms. The National Guard Bureau eventually produced 199 pages with redactions in this case. It also produced two indices of the reasons for withholding records. Both the former member and the National Guard Bureau moved for summary judgment. The former member contests the sufficiency of the search for records, the sufficiency of the described redactions, the way the National Guard Bureau segregated the responsive information, and asserts claims under the Privacy Act (although he did not sue under the Privacy Act). We studied the National Guard's responses. We agree in part with the former member but not as to his unpleaded Privacy Act theory. We deny the cross-motions and require the National Guard Bureau timely clarify the adequacy of its search both in completeness and method, the propriety of its claimed exemptions through amended indices including its obligation to provide specificity on segregability.

## I.  Undisputed Facts

Christopher Coyne served as a Chief Master Sergeant in the Pennsylvania Air National Guard until 2023.[1] Mr. Coyne intended to serve with the Air National Guard until 2025, but submitted a retirement request at an unidentified time before March or April 2023.[2] Mr. Coyne then withdrew his retirement request at another unidentified time after March or April 2023, but an unidentified person refused to sign the retirement withdrawal memorandum between late July and mid-September 2023.[3]

### *Mr. Coyne administratively challenged the refusal to allow him to withdraw his retirement.*

Mr. Coyne did not like the National Guard's refusal to sign his retirement withdrawal. He began an administrative process, including an investigation by the Inspector General's office which dismissed Mr. Coyne's challenge to the retirement issue without inquiry, or through a deficient inquiry, on September 27, 2023.[4] Mr. Coyne took an immediate administrative appeal, accusing "leadership" of making "false statements."[5] The Inspector General's office denied his appeal around October 21 or 23, 2023.[6]

Mr. Coyne filed a Freedom of Information Act (FOIA) request a few days later seeking the "release of all records and investigation under the FOI[A] pertaining to FRNO 2023-13646 and 2022-13902 in regards to [sic]" a specifically named superior officer.[7] Mr. Coyne requested a date range for a records search between June 9, 2023 through October 23, 2023.[8]

The Department of Defense acknowledged Mr. Coyne's FOIA request, advising him its heavy FOIA workload prevented it from completing the request within the statutory time period and it handles all requests equally on a first-in, first-out basis.[9]

Nearly two years passed without a response by the Department of Defense to Mr. Coyne's FOIA request. On August 12, 2025, Mr. Coyne filed an administrative appeal objecting to the

delay in his FOIA request.[10] With no production of documents responsive to his FOIA request through the administrative appeal, Mr. Coyne considered his administrative remedies constructively exhausted by November 2023.[11]

### *Mr. Coyne sues here seeking injunctive and declaratory relief under FOIA.*

Mr. Coyne filed a Complaint here on September 25, 2025 against the National Guard Bureau and Department of Defense for injunctive and declaratory relief under FOIA.[12] Mr. Coyne sought (a) an Order compelling Defendants to "immediately process [his FOIA request] and produce all responsive records;" (b) a declaratory judgment Defendants violated section 552 of FOIA "by failing to make a timely determination and produce records as required by law;" and (c) "[a]ny other relief the Court deems just and proper to effectuate compliance and transparency."[13]

The parties agreed to a procedure to progress short of trial: the National Guard Bureau and Department of Defense would provide Mr. Coyne an update regarding the status of processing his FOIA request by January 21, 2026, complete processing his FOIA request, and respond to it by January 30, 2026 including a cover letter summarizing any exemptions to disclosure invoked by Defendants; a time frame within which Mr. Coyne may notify Defendants of any issues; the parties would provide us with a status report regarding resolution of their dispute; and we would set summary judgment dates.[14]

The National Guard Bureau and Department of Defense responded to Mr. Coyne's FOIA request in late January 2026, but did not produce documents, instead highlighting concerns Mr. Coyne's requests involved a "named third-party" and offering Mr. Coyne an opportunity to modify his FOIA request to allow for the release of certain records without the named individual.[15] Mr. Coyne modified his FOIA request to remove reference to the named individual to allow the release of records.[16]

***The National Guard Bureau produced documents in full, in part, and withheld others.***

On February 12, 2026, the National Guard Bureau provided Mr. Coyne with its final response to his October 25, 2023 FOIA request.[17] The National Guard Bureau told Mr. Coyne it found a total of 199 pages responsive to his request.[18] The National Guard Bureau withheld ninety-three of the 199 identified pages of documents in their entirety relating to FRNO 2023-13646 and FRNO 2022-13902.[19] The National Guard Bureau produced the remaining documents with redactions invoking three FOIA exemptions: the deliberative process privilege; personal privacy; and law enforcement privacy.[20]

The parties continue to dispute the adequacy of the National Guard Bureau's response to Mr. Coyne's FOIA request.

## II.    Analysis

The parties cross-moved for summary judgment.[21] The parties agree on the four issues ripe for decision on summary judgment: (1) the adequacy of the National Guard Bureau's search for documents; (2) the propriety of the FOIA exemptions invoked by the National Guard Bureau; (3) the sufficiency of the National Guard Bureau's segregability of documents; and (4) the applicability of the Privacy Act to this action and whether Mr. Coyne's request is properly processed under the Privacy Act. Each party briefed the issues. We find questions regarding the adequacy of Defendants' search and insufficiency of the submitted *Vaughn* indices and Declaration, including segregability issues, preclude summary judgment at this time.[22] We deny summary judgment (with the exception of the unpleaded Privacy Act issue) and grant leave for Defendants to amend their *Vaughn* indices and supporting Declaration to explain the adequacy of their search, both in completeness and method, the propriety of their claimed exemptions, and the segregability issue.

Congress enacted FOIA "to facilitate public access to Government documents" to further Congress's intent to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."[23] There is a "strong presumption" in favor of disclosure and the burden is on the governmental agency to justify withholding an entire document or redacting requested documents.[24] But Congress created nine exemptions where the public's right to know is outweighed by the government's legitimate interest in keeping certain information confidential.[25]

We are concerned today with three exemptions invoked by the National Guard Bureau: the predecisional/deliberative process privilege; the personal privacy privilege; and the law enforcement privilege.[26] We must "narrowly constru[e]" the exemptions while at the same time giving them "a meaningful reach and application."[27] The governmental agency bears the burden of proving the information it withheld falls within the invoked exemption.[28]

We review *de novo* the National Guard Bureau's decision to withhold documents.[29] It must provide reasonably specific information explaining how the invoked exemption applies, describe the withheld material, provide the justification for non-disclosure, and cite each exemption asserted.[30] The Bureau must provide an affidavit and description of documents specific enough "to give the requester 'a meaningful opportunity to contest' the withholding of the documents and the court to determine whether the exemption applies."[31]

The Bureau may meet its specificity obligations by submitting a "*Vaughn* index" which "must consist of one comprehensive document, adequately describe each withheld document or redactions, state the exemption claims, and explain why each exemption applies."[32] We may require an *in camera* inspection of the withheld documents where a *Vaughn* index is insufficient in detail to allow for meaningful judicial review.[33]

The Bureau is entitled to summary judgment if it demonstrates the information it withheld is exempt.[34] Summary judgment will not be entered in the Bureau's favor if its explanation is contradicted by evidence in the record or if the agency acted in bad faith.[35]

**A.  Fact issues preclude a finding the Bureau conducted an adequate search.**

We begin by examining Mr. Coyne's challenge to the adequacy of the Bureau's search. The Bureau must show its search was reasonably calculated to uncover relevant documents responsive to his FOIA request. Our Court of Appeals adopted the standard applied to an agency's search as set by the United States Court of Appeals for the District of Columbia in *Oglesby v. United States Department of the Army*.[36]

We evaluate the adequacy of an agency's search for records responsive to a FOIA request by examining the agency's explanation, typically through a sworn statement, of (1) the completeness of the locations and files searched; and (2) the methods used to search those locations and files.[37] With regard to completeness, the agency must demonstrate it searched all locations and files "likely" to have responsive records.[38] With regard to methods used, the agency must show "its methods for searching those locations and files were 'reasonably calculated' to find responsive records."[39]

The agency has the burden of showing at the summary judgment stage it complied with FOIA.[40] The agency may meet its burden in response to a challenge to the adequacy of its search for the requested records, "by providing 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials … were searched.'"[41] Agency affidavits are presumed to be made in good faith.[42]

The requester may provide "countervailing evidence" on the adequacy of the agency's search and if the record "raises substantial doubt, particularly in view of 'well defined requests

and positive indications of overlooked materials,' summary judgment is inappropriate."[43] The requesting party may defeat the agency's motion for summary judgment by producing evidence raising "a substantial doubt that the search was adequate."[44] The agency's search may be made manually or electronically, but it "must be adequate enough to reasonably assure that all files likely to contain the requested information have been searched."[45] In determining whether the agency conducted a reasonable search, "[t]he relevant inquiry is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.'"[46] We look to the appropriateness of the search methods and not the "fruits of the search."[47]

### 1.    The Bureau's Declaration in support of the adequacy of its search.

The National Guard argues it conducted an adequate search, submitting the Declaration of Ronnie T. Beharry, an Information and Privacy Specialist for the National Guard Bureau, Office of Information and Privacy.[48] Mr. Beharry swears the National Guard Bureau "coordinated and directed renewed taskings to likely record custodians" (not identified) to comply with Mr. Coyne's FOIA request and identified the "Air National Guard Inspector General" as the "likely records custodian."[49]

Mr. Beharry swears the Bureau's search consisted of searching for records "within the terms" of Mr. Coyne's FOIA request, digitally searching the "Automated Case Management System," and finding 199 potentially responsive pages of documents relating to the two File Records identified in Mr. Coyne's FOIA request (FRNO 2023-13646 and FRNO 2022-13902).[50] Mr. Beharry does not identify what is meant by "within the terms" of Mr. Coyne's FOIA request, what terms were actually searched, or what is meant by the "Automated Case Management System" the National Guard Bureau searched.

Mr. Beharry swears the Bureau properly exempted all 199 pages of potentially responsive documents from release because Mr. Coyne's FOIA request named a specific individual.[51] Without the consent of the specific individual, or an official acknowledgement of an investigation or disciplinary action, or an overriding public interest, the National Guard Bureau withheld all 199 pages claiming the personal privacy exemptions under section 552(b)(6) (personal privacy) and section 552(b)(7)(C) (exempting from disclosure records complied for law enforcement purposes implicating personal privacy).[52]

The National Guard Bureau extended to Mr. Coyne an opportunity to amend his FOIA request to remove the name of the individual. Mr. Coyne modified his FOIA request to remove the name of the individual and the National Guard Bureau then produced 199 pages redacted under the three claimed FOIA exemptions.[53]

### 2.  Mr. Coyne's response to the Bureau's Declaration.[54]

Mr. Coyne argues the National Guard Bureau conducted an inadequate search in terms of completeness and argues Mr. Beharry's Declaration does not support the National Guard Bureau's burden to show adequacy. Mr. Coyne argues the Beharry Declaration swears the National Guard Bureau searched only one database—the Automated Case Management System—but did not search emails, the 111th Attack Wing Inspector General's files, the Pennsylvania Joint Force Headquarters Inspector General's office, or the Department of the Air Force. Mr. Coyne argues the Beharry Declaration shows the Bureau searched only one database and does not explain why the other locations were not searched.

As an example, Mr. Coyne cites Mr. Beharry's Declaration swearing the Army and Air National Guard units are state units operating under the states' Governors and Adjutants General while also serving as reserve components for the United States Army and Air Force and the states'

Army and Air Force National Guard entities create and maintain federal records in the course of federally funded missions and programs even though the entities remain under state command and federal records may remain in the states' custody.[55] Mr. Coyne argues if this is so, then Pennsylvania's National Guard Inspector General would have records relating to federal matters, and a search of the federal Automated Case Management System database only is not a search of all locations and files "likely" to have responsive records.[56]

Mr. Coyne also argues the Beharry Declaration shows the Bureau did not search the Department of the Air Force Inspector General's Office which would contain, at a minimum, records acknowledging receipt of a "notification of allegations against a senior official" sent by the Command Inspector General to the Department of the Air Force, Inspector General's Office as noted on the *Vaughn* index.[57]

The National Guard Bureau did not reply to Mr. Coyne's response with regard to his challenge to the completeness of the search as supported by Mr. Beharry's Declaration. We have only the Beharry Declaration swearing the National Guard Bureau "coordinated and directed renewed taskings to likely record custodians to comply" with Mr. Coyne's FOIA request and "[i]n this case, the likely record custodian was the Air Force National Guard Inspector General."[58]

### 3.    The Bureau's Declaration is insufficient.

Our Court of Appeals last year addressed the completeness of a search responsive to a FOIA request in *Viola v. United States Department of Justice*.[59] Mr. Viola made a FOIA request to the Executive Office for the United States Attorneys and the FBI for documents relating to his conviction in a mortgage fraud case.[60] Both agencies produced documents.[61] Mr. Viola sued the agencies arguing their searches were inadequate.[62] Our Court of Appeals concluded the Executive Offices' search was adequate but the FBI's search was not.[63]

9

Mr. Viola argued the Executive Office of the United States Attorneys did not perform an adequate search because it failed to search all locations and files likely to have responsive records and instead searched only his case file and the files of the Assistant United States Attorney who prosecuted his case.[64] Our Court of Appeals rejected Mr. Viola's argument, finding the Executive Office provided a declaration explaining it searched its FOIA storage room, electronic folders, and databases with the United States Attorney's Office for the Northern District of Ohio which it believed would locate "any and all records related to Mr. Viola or his business."[65] Our Court of Appeals found this sufficient under the *Oglesby* standard.[66]

But our Court of Appeals concluded the FBI did not make an adequate search, agreeing with Mr. Viola's argument the FBI searched only its central records system and did not explain why. Our Court of Appeals found the FBI's Declaration stating records responsive to the FOIA request "would reasonably be expected to be located in" its central record system is inadequate because *Oglesby* requires more than a search of the locations "most likely" to have responsive records; the standard requires the FBI search **all** locations **likely** to have responsive records.[67] Our Court of Appeals concluded the FBI "did not expressly 'close the loop' by stating that no location other than its Central Records System would likely have records responsive to [Mr.] Viola's FOIA request."[68] And the court could not reasonably infer the FBI "closed the loop" on eliminating other locations other than its own central records system.[69]

We are also guided by Judge Savage's finding a declaration submitted by the Director of Research Management for the agency did not contain enough information to determine the adequacy of the search responsive to the plaintiff law firm's FOIA request in *Cozen O'Connor v. United States Department of Treasury*.[70] The declarant swore the agency "focused" its search in its evidentiary files, described what the files "typically" contained, and stated a search outside the

10

evidentiary files "would not likely locate material."[71] Judge Savage concluded the agency did not describe the other files or how it searched them, if at all, to determine whether the other files may have information and the declaration did not explain why the agency concluded the other files are "not likely" to contain responsive documents.[72] Judge Savage also concluded the agency referred only to "gathering" information without describing the methodology or specifics as to how the agency conducted the search.[73] Judge Savage concluded he could not determine whether the agency's search was reasonably calculated to discover responsive documents and required the agency to clarify the scope of its search and verify the responsive information is not in the files other than the "evidentiary files" the declarant swore the agency searched.[74]

We conclude the Beharry Declaration is similar to the deficient declarations submitted by the FBI in *Viola* and the Department of Treasury in *Cozen O'Connor* and are insufficient to allow us to determine whether the National Guard Bureau made an adequate search in both completeness and method. Mr. Beharry swears the Bureau coordinated and directed "renewed taskings to likely record custodians to comply" with Mr. Coyne's request. There is no further explanation as to what "renewed taskings" means, the identity of "likely record custodians" so "tasked," and how Mr. Beharry determined the "likely record custodian" is the Air National Guard Inspector General of all the unidentified "likely record custodians."[75] As our Court of Appeals explained in finding the FBI's search insufficient, the agency must "close the loop" by stating "no location other than its Central Records System would likely have records responsive" to a FOIA request.[76]

We also have no explanation before us today of the "Automated Case Management System," the scope of documents it includes, or how the Bureau searched "within the terms of the FOIA Request" without identifying which terms it searched. We are left with attempting to guess

which of the terms in Mr. Coyne's FOIA request the National Guard Bureau put into the search of the "Automated Case Management System." It is not our burden to do so.

We grant Defendants leave to clarify the scope of who they "tasked" to determine the "likely record custodian" or custodians of the information requested by Mr. Coyne, how it determined the Air National Guard Inspector General is the only location "most likely" to have responsive records, and the method used in the search, including identification of search terms.

**B. The Bureau's *Vaughn* indices are insufficient to determine the propriety of invoked exemptions.**

We next turn to the National Guard Bureau's *Vaughn* indices to determine the propriety of the three invoked exemptions. Mr. Coyne responds the National Guard Bureau's exemptions are "overclaimed," arguing the *Vaughn* index for FRNO 2022-13902: (a) asserts privacy exemptions not applicable to three "generic administrative documents" withheld and (b) treats "duplicate documents" inconsistently by releasing one document in part but then withholding in full another document identical in subject matter and date range.[77] Mr. Coyne argues the inconsistencies "undermin[e] the reliability of the *Vaughn* index as a whole."[78]

A *Vaughn* index must adequately describe each withheld document or redaction, the exemption claimed, and an explanation of why each exemption applies.[79] To be sufficient, a *Vaughn* index "must describe ***each*** document or portion thereof withheld, and for ***each*** withholding it must discuss the consequences of disclosing the sought-after information …. Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate."[80]

The *Vaughn* indices here do not provide a description of each withheld document or redacted document or explain the consequence of disclosing the sought-after information as

12

required by the Court of Appeals for the District of Columbia in *King.* For example, the *Vaughn* index for FRNO 2022-13902 submitted by the Bureau here provides in the first two entries:[81]

| Doc. No. | Doc. Type | Pages | Date / Date Range | Author(s) / Recipient(s) | Review Result | Exemptions |
|---|---|---|---|---|---|---|
| 2024-00364-L Responsive Records (FRNO 2022-13902) | Email<br><br>Subject: IG Compliant and Supporting Documentation | 1 | July 21, 2022 | From: Chief Master Sergeant (CMSgt) Christopher Coyne<br><br>To: Senior Master Sergeant (SMSgt) United States Air Force (USAF) Air National Guard (ANG) 111th Security Forces Squadron Inspector General (SFS/IG) | Released in part | (b)(6) – Personal Privacy<br><br>(b)(7)(C) – Protect the release of information that could reasonably be expected to constitute an unwarranted invasion of personal privacy in Law Enforcement records |
| 2024-00364-L Responsive Records (FRNO 2022-13902) | Email<br><br>Subject: (Redacted) RIP_OVER 60 MFR | 2 | July 8, 2022 | From: (Redacted)<br><br>To: Redacted; 111 Attack Wing Force Support Staff (ATKW/FSS) Personnel | Released in part | (b)(7)(C) – Protect the release of information that could reasonably be expected to constitute an unwarranted invasion of personal privacy in Law Enforcement records |

The Bureau does not describe the document withheld or portion withheld, does not explain the consequences of disclosing the information, and only offers a rote recitation of the exemption claimed. In the second entry, the "released in part" document—an email—has the name of the sender redacted. We have no context and no way to meaningfully review the National Guard Bureau's claimed exemptions. The remainder of the Bureau's *Vaughn* indices suffer from the same inadequacies.

Mr. Beharry's Declaration includes three paragraphs explaining generally why the National Guard Bureau asserts the exemptions under sections 552(b)(5) (deliberative process), (b)(6) (personal privacy), and (b)(7)(C) (law enforcement information reasonably expected to lead to the disclosure of an unwarranted invasion of personal privacy).[82] Mr. Beharry "does not 'specifically identify[ ] the reasons why a particular exemption is relevant' to a particular document or 'correlat[e] those claims with the particular part of a withheld document to which they apply.'"[83]

We require the National Guard Bureau to timely submit *Vaughn* indices containing descriptions of each document withheld in full or in part and the reason for the exemption.

**C. The insufficient *Vaughn* indices and over-generalized Beharry Declaration does not show the National Guard Bureau conducted an adequate segregability analysis.**

Congress through FOIA requires an agency to segregate documents where possible; "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt …."[84] An agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material."[85] But an agency must "identify the exempt material and 'provide descriptions of excerpts deemed to be non-segregable, with explanations as to these decisions.'"[86]

The Beharry Declaration swears "[w]e reviewed each page of the responsive records and provided [Mr. Coyne] with the reasonably segregable portions and redacted the portions which were exempt from disclosure."[87] The Beharry Declaration asserts the records withheld in full had personal information regarding other individuals, and/or deliberative and predecisional communications "so inextricably intertwined" that releasing "various disjointed words and phrases within the documents would yield minimal or no informational content and would require the agency to expend significant time and resources for redaction."[88]

The Beharry Declaration's blanket assertion the documents withheld in full are "so intertwined" is not sufficient to meet the segregability burden. For example, in *Defenders of Wildlife v. United States Border Patrol*, Judge Friedman found an insufficient *Vaughn* index and "blanket declaration that all facts are so intertwined to prevent disclosure under the FOIA" did not constitute a sufficient explanation of non-segregability.[89] Rather, the agency, for each entry on the *Vaughn* index, "is required to 'specify in detail which portions of the document are disclosable and which are allegedly exempt.'"[90] Judge Friedman held the agency's *Vaughn* index insufficient and its declaration the withheld information is not reasonably segregable "because it

14

is so intertwined with protected material" insufficient because it did not "show with reasonable specificity why the documents cannot be further segregated' and additional portions disclosed."[91] Judge Friedman denied the parties' cross-motions for summary judgment based on the insufficient *Vaughn* index and ordered the agency amend or supplement the *Vaughn* index and accompanying declarations.[92]

The deficiencies in the National Guard Bureau's *Vaughn* indices and the failure of the Beharry Declaration to provide a detailed justification and not just a conclusory statement regarding segregable information prevents us from determining whether the National Guard Bureau met its segregability obligations.

We grant Defendants leave to amend their *Vaughn* indices and Beharry Declaration to address the insufficiencies in the segregability obligation.

### D.  The Privacy Act does not apply here.

Mr. Coyne made a FOIA request to the National Guard Bureau in October 2023. When the National Guard Bureau did not timely produce documents responsive to Mr. Coyne's request under FOIA, he sued the Bureau and the Department of Defense seeking injunctive and declaratory relief in the form of an order compelling Defendants to immediately process his FOIA request and produce all responsive records along with a declaration Defendants violated FOIA.[93]

Mr. Coyne, for the first time when moving for summary judgment, now asks us to enter judgment in his favor by declaring Defendants also "failed to properly process [his] request under the Privacy Act."[94] But he did not plead a Privacy Act claim in his Complaint.

Congress through the Privacy Act requires each federal agency "that maintains a system of records shall … upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him … to review the record and have a

copy made of all or any portion thereof in a form comprehensible to him ….”[95] The Privacy Act provides civil remedies “[w]henever any agency … refuses to comply with an individual request” under the Act.[96] A plaintiff may challenge an agency's withholding of documents under the Privacy Act. In such cases, we determine *de novo* whether the agency properly withheld documents.[97]

Like FOIA, the Privacy Act contains categories of exemptions.[98] Where an individual makes a request under both FOIA and the Privacy Act, the responding agency “must demonstrate that the documents fall within some exemption under ***each*** Act.”[99] If a FOIA exemption applies to a document, but a Privacy Act exemption does not, the document must be released under the Privacy Act and if a Privacy Act exemption applies but a FOIA exemption does not, the document must be released under FOIA.[100]

Mr. Coyne argues the Privacy Act applies because the National Guard Bureau produced three additional pages of information relating to FRNO 2023-13646 initially withheld under FOIA exemption section 552(b)(5), the deliberative process privilege. Mr. Coyne appears to pro se argue some form of waiver because the National Guard Bureau produced to him the three additional pages of documents pertaining to him under the Privacy Act.

Mr. Beharry swears the National Guard Bureau evaluated the FOIA request under the Privacy Act “per agency policy” to determine “if any information would be releasable under [the Privacy Act] standard” even though Mr. Coyne did not make a request under the Privacy Act.[101] He swears the Bureau partially released three additional pages under the Privacy Act earlier withheld under an invoked FOIA exemption.[102] He swears “[n]o personal identifier assigned to [Mr. Coyne] resulted in the retrieval of any of the records still withheld.”[103]

16

The problem is Mr. Coyne never made a request for documents under the Privacy Act; he requested documents under FOIA only. And when the National Guard Bureau did not respond to his FOIA request, Mr. Coyne filed a complaint against the Bureau and the Department of Defense seeking relief under FOIA and did not request relief under the Privacy Act. He cannot, through his motion for summary judgment or opposition to Defendants' motion for summary judgment, seek a declaration they violated the Privacy Act.[104] The National Guard Bureau withheld responsive documents in full and partially based on FOIA exemptions. It did not withhold documents in whole or in part under a claimed Privacy Act exemption. There is nothing for us to review *de novo*. We enter judgment in favor of Defendants on the Privacy Act issue.[105]

### III. Conclusion

We deny the cross-motions for summary judgment. We require the National Guard Bureau and Department of Defense to clarify the adequacy of their search both in completeness and method, the propriety of their claimed exemptions through amended *Vaughn* indices, including their obligation to provide specificity on segregability.

---

[1] Defendants' Response to Plaintiff's SUMF, ECF 26 at 3, ¶ 1. Our Policies require parties moving for relief under Fed. R. Civ. P. 56 include a memorandum, Statement of Undisputed Material Facts ("SUMF"), and an appendix in support of summary judgment. The parties here cross-moved for summary judgment. Mr. Coyne moved for summary judgment, compiled an appendix, submitted a brief in support of his motion, and a SUMF at ECF 23, 23-1, 23-3, 23-4. The National Guard Bureau and Department of Defense filed their Motion for summary judgment, a brief in support of their motion, a supplemental appendix, a response to Mr. Coyne's SUMF and their own SUMF at ECF 25, 25-1 through 25-6, and ECF 26. Mr. Coyne responded to the National Guard Bureau and Department of Defense's motion together with a reply brief in support of his Motion for summary judgment at ECFs 27 and 28 (which appear identical).

[2] Complaint, ECF 1-1 at 1.

[3] *Id.*

[4] *Id.*

---

[5] *Id.*

[6] *Id.* at 1–2.

[7] ECF 26, Defendants' Response to Coyne SUMF ¶ 3; ECF 25-3, Appx. 166a–167a. "FRNO" means "File Reference Number."

[8] ECF 25-3, Appx. 166a.

[9] ECF 23-1, Appx. 1a–2a.

[10] *Id.*, Appx. 3a.

[11] ECF 23-4, Coyne SUMF ¶ 9.

[12] ECF 1.

[13] *Id.* ¶ 6.

[14] ECF 20.

[15] ECF 23-1, Appx. 13a–18a; ECF 26, Defendants' Response to Coyne SUMF ¶¶ 14–15.

[16] ECF 23-1, Appx. 22a–23a.

[17] *Id.*, Appx. 24a–25a.

[18] *Id.*

[19] ECF 26, Defendants' Response to Coyne SUMF ¶ 19.

[20] *Id.* ¶ 20.

[21] Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party does not prevent summary judgment. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). When determining whether a disputed fact is genuine, we draw all inferences in favor of the non-moving party. *Id.* We do not weigh evidence or make credibility determinations. *Spivack v. City of Phila.*, 109 F.4th 158, 165–66 (3d Cir. 2024) (citing *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021)).The Supreme Court "outlined two closely related methods for a movant to succeed at summary judgment": (1) under the "standard approach," the moving party may produce material facts, genuinely undisputed, entitling it to judgment as a matter of law; and (2) under the "Celotex approach," the  moving party "may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case … on

which that party will bear the burden of proof at trial." *Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 630 (3d Cir. 2024) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Summary judgment is appropriate where the nonmoving party does not make a showing sufficient to establish the existence of an element essential to its case and on which it bears the burden of proof at trial. *SodexoMAGIC*, *LLC*, 24 F.4th at 204 (citing *Celotex Corp.*, 477 U.S. at 322).

When both parties move for summary judgment, we "must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the [summary judgment] standard." *Spivack*, 109 F.4th at 166 n.5 (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016)).

[22] A *Vaughn* index, so named after the Court of Appeals for the District of Columbia's seminal decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), "is a procedural tool developed … to enable a district court to evaluate allegations of exemption advanced by a governmental agency, and to assure that claimed exemptions are justified under [FOIA]." *Viola v. U.S. Dep't of Justice*, 157 F.4th 524, 532, n.4 (3d Cir. 2025) (first quoting *Coastal States Gas Corp. v. Dep't of Energy*, 644 F.2d 969, 972 (3d Cir. 1981); then quoting *Biear v. Attn'y Gen.*, 905 F.3d 151, 154 (3d Cir. 2018) (("[A] Vaughn index[ is] an itemized index specifying the basis for withholding on a document-by-document basis.")).

[23] *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

[24] *Id.*

[25] *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)).

[26] Congress in the Act provides:

- **Pre-decisional/deliberative process privilege**: "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." 5 U.S.C. § 552(b)(5).

- **Personnel, medical, and "similar files"**: "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The National Guard withheld names of Department of Defense employees below the rank of General Officer as well as personal information on third parties. ECF 23-1, Appx. 24a.

- **Records or information complied for law enforcement purposes:** "but only to the extent that the production of such law enforcement records or information … could reasonably be expected to constitute and unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The National Guard "considered the foreseeable

19

harm standard when reviewing records and applying exemptions under the FOIA in the processing of this request." ECF 23-1, Appx. 24a.

[27] *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 925 (first quoting *FBI v. Abramson*, 456 U.S. 615, 630 (1982); then quoting *John Doe Agency*, 493 U.S. at 152).

[28] *Id.* (citing 5 U.S.C. § 552(a)(4)(B)).

[29] 5 U.S.C. § 552(a)(4)(B).

[30] *Cozen O'Connor v. U.S. Dep't of Treasury*, 570 F. Supp. 2d 749, 764–65 (E.D. Pa. 2008) (citations omitted).

[31] *Id.* at 765 (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987)).

[32] *Id.* (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1144–45 (D.C. Cir. 1983).

[33] *Id.* (citing *Patterson v. FBI*, 893 F.2d 595, 599 (3d Cir. 1990)).

[34] *Id.* at 765–66.

[35] *Id.*

[36] *Viola v. U.S. Dep't of Justice*, 157 F.4th 524, 535 (3d Cir. 2025) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57 (D.C. Cir. 1990)).

[37] *Id.* (citing *Oglesby*, 920 F.2d at 68).

[38] *Id.* (quoting *Oglesby*, 920 F.2d at 68).

[39] *Id.*

[40] *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313 (D.C. Cir. 2003) (citing *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).

[41] *Id.* at 313–14 (quoting *Valencia-Lucena*, 180 F.3d at 326); *see also Manatt v. U.S. Dep't of Homeland Sec.*, 473 F. Supp. 3d 409, 416–17 (E.D. Pa. 2020) (agency failed to show it conducted an adequate search under FOIA allowing the agency to supplement the record with additional detail about the search it conducted).

[42] *Hoffman v. U.S. Customs and Border Prot.*, 679 F. Supp. 3d 167, 177 (E.D. Pa. 2023).

[43] *Iturralde*, 315 F.3d at 233 (quoting *Valencia-Lucena*, 180 F.3d at 326).

[44] *Cozen O'Connor,* 570 F. Supp. 2d at 766 (citing *Valencia-Lucena*, 180 F.3d at 326).

[45] *Id.* (citations omitted).

[46] *Hoffman*, 679 F. Supp. 3d at 177 (quoting *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007)) (emphasis in original).

[47] *Id* (quoting *Iturralde*, 315 F. 3d at 315).

[48] ECF 25-6, Appx. 184a–188a. Mr. Beharry swears the Office of Information and Privacy is the "FOIA Requester Service Center" for records of the National Guard Bureau, a joint activity of the Department of Defense, and is the "coordinating office" for FOIA matters involving the Army and Air National Guard organizations in the States, Territories, and the District of Columbia. *Id.*, Appx. 184a, ¶ 2.

[49] ECF 25-6, Appx. 185a, ¶ 4.

[50] *Id.*, Appx. 185a–186a, ¶ 5.

[51] *Id.*

[52] *Id.*

[53] *Id.*, Appx. 186a, ¶¶ 6–8.

[54] Mr. Coyne moved for summary judgment before the National Guard Bureau moved for summary judgment attaching Mr. Beharry's Declaration. Mr. Coyne responded to the Beharry Declaration in his Response/Reply brief. ECFs 27, 28.

In his moving motion, Mr. Coyne argued the National Guard Bureau's search is inadequate as a matter of law for three reasons: (1) it failed entirely to search for or produce records from File Record number 2023-21930, which is a higher-level review by the National Guard Bureau-Inspector General. Mr. Coyne believes this higher-level review—conducted *after* his FOIA request and never asked for—because his FOIA request sought "all records and investigations pertaining to [File Record Numbers] 2023-13646 and 2022-13902" and the "higher-level review" under 2023-21930 pertains directly to 2023-13646; (2) the National Guard Bureau did not provide a declaration or affidavit describing its search methodology; and, (3) the documents produced consist almost entirely of materials Mr. Coyne submitted to the Inspector General, there is missing information, and there is no evidence of a substantive investigation.

The National Guard argues Mr. Coyne's initial FOIA request did not seek the higher-level Inspector General File No. 2023-21930 and it is not within the scope of Mr. Coyne's FOIA request nor could it be within the scope because the 2023-21930 file did not exist at the time of Mr. Coyne's FOIA request; Mr. Coyne could have, but did not, submit a modified or new FOIA request to include the higher-level Inspector General File at 2023-21930; and when Mr. Coyne modified his request on February 2, 2026 to eliminate the named individual, he did not ask for the 2023-21930 investigation. Mr. Coyne's FOIA request defined the cut-off date of the search as of October 23, 2023.

[55] ECF 25-6, Appx. 184a–185a, ¶ 3.

[56] ECF 27 at 3–4.

[57] *Id.*

[58] ECF 25-6, Appx. 185a, ¶ 4.

[59] 157 F.4th 524 (3d Cir. 2025).

[60] *Id.* at 531.

[61] *Id.* at 532.

[62] *Id.*

[63] *Id.* at 535.

[64] *Id.*

[65] *Id.* at 536.

[66] *Id.*

[67] *Id.* (emphasis in original).

[68] *Id.*

[69] *Id.* at 536–37.

[70] *Cozen*, 570 F. Supp. 2d at 766–68.

[71] *Id.* at 767.

[72] *Id.*

[73] *Id.* at 768.

[74] *Id.* at 767–68.

[75] ECF 25-6, Appx 185a, ¶ 4.

[76] *Viola*, 157 F.4th at 536.

[77] ECF 27 at 9–10.

[78] *Id.* at 10.

[79] *Cozen O'Connor*, 570 F. Supp. 2d at 765.

[80] *W. Star Hosp. Auth. Inc. v. U.S. Dep't of Veterans Affairs*, No. 18-1011, 2021 WL 9595459, at *4 (W.D. Pa. Feb. 12, 2021) (quoting *King*, 830 F.2d at 223–24) (emphasis added).

[81] ECF 25-4, Appx. 168a.

[82] ECF 25-6, Appx. 186a–187a, ¶¶ 9–11.

[83] *Watkins Law & Advocacy, PLLC v. U.S. Dep't of Justice*, 78 F.4th 436, 452 (D.C. Cir. 2023) (quoting *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

[84] 5 U.S.C. § 552(b).

[85] *Greenpeace, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 131–32 (D.D.C. 2018) (quoting *Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir. 2013)).

[86] *Id.* at 132 (quoting *Am. Immigration Council v. DHS*, 950 F. Supp. 2d 221, 248 (D.D.C. 2013)).

[87] ECF 25-6, Appx. 188a, ¶ 13.

[88] *Id.*

[89] *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 90–91 (D.D.C. 2009); *see also Ctr. for Pub. Integrity v. U.S. Dep't of Commerce*, 401 F. Supp. 3d 108, 116–17 (D.D.C. 2019) (blanket declaration "all facts are so intertwined to prevent disclosure under the FOIA does not constitute a sufficient explanation of non-segregability") (quoting *Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 52 (D. D.C. 2017)).

[90] *Defenders of Wildlife*, 623 F. Supp. 2d at 90 (quoting *Wilderness Soc'y v. Dep't of Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004)).

[91] *Id.*

[92] *Id.* at 93.

[93] ECF 1, ¶ 6. a.– c.

[94] ECF 23 at 1, ¶ 1.

[95] 5 U.S.C. § 552a(d)(1).

[96] *Id.* § 552a(g)(1)(B).

[97] *Id.* § 552a(g)(3)(A) ("In any suit brought under the [civil remedies provision], the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him. In such a case the court shall determine the matter de novo, and may examine the contents of any agency records in camera to determine whether the records or any portion thereof may be withheld under any of the exemptions set forth in [the Act], and the burden is on the agency to sustain its action.").

[98] *Id.* § 552a(j), (k).

[99] *Barouch v. U.S. Dep't of Justice*, 962 F. Supp. 2d 30, 66 (D. D.C. 2013) (quoting *Martin v. Office of Special Counsel Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1184 (D.C. Cir. 1987)) (emphasis in original).

[100] *Id.* (footnote omitted).

[101] ECF 25-6, Appx. 187a-188a, ¶ 12.

[102] *Id.*

[103] *Id.*

[104] *Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008); *Mucci v. Waters*, No. 23-2649, 2025 WL 2555373, at *5 (E.D. Pa. Sep. 3, 2025); *J.L. v. Lower Merion Sch. Dist.*, No. 20-1416, 2024 WL 4829716, at *4 (E.D. Pa. Nov. 19, 2024) (collecting cases).

[105] We need not reach the merits of the Privacy Act claim as argued by the parties.